Chancellor Johnston
delivered the opinion of the court.
The competency of Connolly, and of Mrs. Elizabeth Murray, is questioned by the first ground of appeal.
*166 Connolly, on the 28d of September, 1826, for the consideration (if--100 dollars, conveyed Neptune, the subject of this suit, together with another slave, named Jim, to John M. Murray, “ for the special use and benefit of Jane Murray,” (daughter of Connolly, and wife of the said John M. Murray,) “ and the heirs of her body.” On the same day, Connolly, by a separate bill of sale, and in consideration of 150 dollars, conveyed three other slaves, Ned, Ellen and Peggy, to his other daughter, then Elizabeth Connolly, now Elizabeth Murray.
John VI. Murray, died in April, 1829, leaving a testament,of which he appointed his wife sole executrix; and she intermarried with her co-plaintiff, Thompson, in November of the same year.
Thompson, in March, 1830, having probably' for the first time obtained possession of Neptune, delivered him to Lance to sell him ; and Lance sold him accordingly to Wagner, with whom he remained about three months ; when understanding that the title was questionable, Wagner returned him.
The Sheriff immediately levied on him, as Connolly’s property, under a fi. fa. in favor of the defendant, Schmidt, against Connolly ; and on the 8th of June, 1830, sold him to the defendant.
On the 23d of Feb. 1835, the plaintiffs brought this action, laying claim to the slave Neptune, as the personal representatives of John M. Murray. v
On the trial, the defendant undertook to shew that Connolly’s bill of sale to Murray, for Neptune, was fraudulent; and to that point examiued Connolly and Elizabeth Murray.
The question is, whether they were competent to give that testimony.
The objection to Connolly’s competency is stated to be, that should Neptune be recovered from the defendant, the credit for the purchase money will be taken off his execution, and Connolly will become again, liable to its operation ; or that if the credit still remains on the execution, the defendant may resort to Connolly for the purchase money, as for so much paid for him on a consideration which has failed; and that Connolly is, therefore, interested to ward off this liability, by giving such testimony as will prevent the defendant from losing the suit.
But it seems to be forgotten, that the defendant did not purchase from Connolly, but from the sheriff; who sold only such title, better or worse, as Connolly had. There was no warranty on the part of Connolly. He was no party to the sale ; nor otherwise privy to it, than that the law authorized the sheriff to cut him off from after-wards claiming the property sold. So that the defendant is bound by the principle of caveat emplor; and in. casé of losing the property, *167 ■ can, in law, neither resort to Connolly for the purchase money, nor claim to have the credit taken off his execution, so as to restore its operation.
The case in New. Reports, mentioned by Phillips, (1 Phil. 52, 3; 2 New. Rep. 381) and relied on by the plaintiff’s counsel, does not make Connolly incompetent. I have not had an opportunity to consult the reporter, but the case, as represented by Phillips, was this : Goods in possession of A, were levied on by the sheriff for the debt of B. On a suit brought by A against the sheriff for the levy, and tried before a sale by the sheriff, B was held to be incompetent to prove the goods to be his, and not A’s. The distinction between that case and this, is, that before sale, the debtor has an interest to make the goods liable for his debts ; after sale, his interest is gone.
He who objects to the competency of a witness on the score of interest, must prove his interest. We have seen that there is in Connolly no legal liability dependant on this suit. The authorities generally lay it down,-that an interest, to be disqualifying, must be a legal interest. But my opinion is, that a witness is incompetent if he has an interest, whether that interest is legal or equitable, provided the interest be immediate; that is, not dependent on any extrinsic contingency. An interest is no less capable of producing bias in the witness, (which is the ground of disqualification) because it is an equitable one. Besides, a legal interest may result from an equitable liability. If, therefore, the defendant could, on being defeated here, reach Connolly in Equity, Connolly would be incompetent. But, if, Schmidt would, in case of defeat, have any equity against Connolly, it must depend on something not yet shewn. This case is clearly distinguishable from the Hamburgh cases, as every one will at first glance perceive.
The objection against Elizabeth Murray’s competency, is, that if the defendant loses Neptune, the price credited on his execution will be thereby withdrawn, and the execution may be levied on the three slaves which Connolly conveyed to this witness; and that she is interested to avert a recovery attended with such consequences. . But we have already seen that the credit will not be withdrawn, even if the defendant is defeated here.
Before I consider the other grounds of appeal, I will briefly state the reasons upon which I concurred in the judgment of this court, at the last term, ordering a new trial.
The plaintiffs sued as executors of John M. Murray, styling Mrs. Thompson executrix, and Mr. Thompson executor, in her right.
According to the proof, Thompson had reduced the plave into pos *168 session, after his marriage with the executrix ; (and had even made an ineffectual sale of him) before the defendant’s conversion.
The defendant relied on the act of limitations. The circuit judge charged the jury, that if the property in the chattel converted was in the plaintiffs, as executors, in virtue of Mrs. Thompson’s executor-ship, the plaintiffs could not be barred under five years ; on account of the saving in the act in favor of femmes comerles ; which, (he instructed them) applied as well to femmes comerles, sustaining the character of trustees, and suing in a representative right, as to those who sued in their own right.
My opinion was, that the circuit judge was clearly right in holding that the representative character of a femme comerte, would not throw her out of the pale of the saving in the act. That although the character of a trustee is representative, the [trustee’s title to the subject matter of the trust, is a legal one purely. The legal property is in the trustee. That when a femme comerte executrix sues for the estate’s property, she sues for her own propertyand that it is a mere confusion of ideas, to consider that her trusteeship has any thing to do with the matter, beyond conferring the title to the property on her. And that unless the fact of being a trustee converts a femme comerte into a femme sole, she falls within the very words of the saving clause. And not only so, but every reason leading the legislature to protect married women against the bar of the statute in respect to their individual property, or rights, would apply as regards fictitious property or rights held by them ; with this addition, that giving this security in relation to the latter, is a benefit to the cestui que trusts, who are often subjected to disabilities themselves.
But I thought the charge was wrong in another respect. I thought 'that as the wife’s right to the property was a legal right, so was the husband’s. Thatit was a common marital right; in exercising which, he might sue for property outstanding, joining her in the action, and assuming that character for both, which alone entitled her to the property. (2 T. R. 477.) But that the property once reduced into his possession, became, to all intents and purposes, in law, his private property; although he must answer for it in equity. That for a conversion of such property once reduced into his possession, (although trust property) the joinder of the wife was unnecessary; and that therefore neither he nor she could claim the saving exception in the act. Just as one who unnecessarily sues as executor, when he may sue in his individual right, is responsible for costs, from which he would be exempt, if it were necessary for him to sue in his representative character.
*169 I am still of the same opinion. And this expression of it will shew that I considered the question, whether Mr. and Mrs. Thompson, or either of them, had, as executors, assented to her legacy in the slave Neptune, wholly immaterial. For, granting they had not assented, and that Thompson still held as executor, (l say Thompson alone, for, as I argued in Spann and Stewart, coverture merged the wife, although a trustee,) they were nevertheless liable to be barred under five years. If I had considered the question of assent to this legacy to be the turning point in the case, on the former trial, I should have acquiesced in the verdict; believing that that question is one of fact, and not of law.
But now the case comes' up Under other' circumstances. The facts of the case have been submitted to a jury, with instructions that they were at liberty to infer an assent from' them. And the appellants now maintain the position, that, for certain reasons stated in their grounds of appeal, the executors could not assent.
The second ground of appeal maintains that an executor cannot assent to a legacy within nine months. The appellants are supposed to refer to that act of the legislature, which protects executors from being sued for the period just mentioned. But as the act was intended for the protection of executors, they may surely waive its benefits'. An executor may not be sued for a legacy within nine months, but he may deliver it without being sued. The authorities' are clear that an executor may, even before probate, assent to a legacy ; surely, then, he can do so at any time afterwards. (Toller 46.)
The same ground of appeal asserts, that when, by the terms of the will, the legacy is given after the payment of debts, the executor cannot assent until the debts are paid. There seems to be nothing to distinguish such a legacy from any other. By law, whether the will-says so or not, no legacy is deliverable until the debts are paid. But what follows? The executor may, if he please, deliver. He does so at his peril. As between the executor and the legatee the assent is valid. If creditors are injured, they may, in case the executor is irresponsible, pursue the legacy in the hands cf the legatee.
But here it is not a creditor who raises the objection, but the executor comes to complain of his own act.
That an executor can assent, is matter of law. Whether these’ executors did or did not assent, was a fact for the consideration of the jury, and I see nothing to induce me to say they found it without evidence.
1 do not understand the proposition laid down by the court, and described in the 5th ground of appeal, to have been laid down as *170 piatter of law; but that the fact of selling to Wagner was pointed out as one from which the jury might infer an assent to the legacy.
Lance and Yeadon, for motion.
Smith, Attorney General, contra.
Filed 13th May, 1836.
With respect to the rights of the remainder-inan, it is too clear that he is not legally affected by the verdict, to admit of a doubt.
My view on that ground relating to the act of limitations, has been already stated.
My opinion, on the whole, is, that the motion should be dismissed.
J. JOHNSTON.
We concur,
HENRY W. DESAUSSURE,
JOSIAH J. EVANS,
WE HARPER,
J. S. RICHARDSON.
B. J. EARLE,